# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BIRCH HILL REAL ESTATE, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>KEVIN BRESLIN, *et al.*,<br><br>Defendants. | Civil Action No. 25-12053 (JXN)(MAH)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendants Kevin Breslin ("Breslin"), Boujie Boken Designs LLC ("Boujie"), and Kathryn Costello's ("Costello") (collectively, "Defendants") motion to strike Plaintiffs'[1] Complaint pursuant to Federal Rule of Civil Procedure[2] 12(f) (ECF No. 16). Plaintiffs opposed the motion (ECF No. 19), and Defendants replied in further support (ECF No. 20). Jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. The Court has carefully reviewed the Complaint and the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to strike is **DENIED**.

---

[1] Plaintiffs collectively refer to: Birch Hill Real Estate, LLC; Ellsworth Real Estate, LLC; EG Real Estate, LLC; N.H. Real Estate, LLC; Kewaunee Real Estate LLC; Lancaster Real Estate LLC; Maple Lane Real Estate, LLC; M Real Estate, LLC; Menominee Real Estate, LLC.; Mineral Point Real Estate LLC; Parkside Real Estate LLC; Mouth Real Estate, LLC; Williams Bay Assisted Living, LLC; Tniop Real Estate, LLC; TR Real Estate LLC; Williams Bay Real Estate LLC, Wisconsin Rapids Real Estate, LLC, Rice Health Care Facilities of Wisconsin, Inc., RHCF, Inc., RHCF Two, Inc.; Rice Housing Facilities, Inc.; and Rice Housing Facilities Two, Inc.

[2] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

I.    **BACKGROUND**[3]

As Chief Executive Officer and Manager of KBWB, a company that owned and operated nursing and rehabilitation homes in the Midwest, Breslin was accused by Plaintiffs of financially mismanaging homes that KBWB operated in Wisconsin. (*See* Compl. ¶¶ 17–18, ECF No. 1.) In December 2018, Plaintiffs sued Breslin and the other owners of KBWB in Wisconsin state court for breaching a guaranty of KBWB's obligations, including an obligation by KBWB to purchase the Wisconsin business for $90 million ("Wisconsin Action"). (*Id*. ¶¶ 18–19.)

On December 25, 2021, to settle the Wisconsin Action, Breslin entered a written agreement to pay Plaintiffs a $3.5 million judgment ("Judgment"), which the Wisconsin court entered on January 16, 2023. (Judgment, ECF No. 1-1.) Pursuant to New Jersey's Uniform Enforcement of Foreign Judgments Act ("UEFJA"), N.J.S.A. 2A:49A-25 *et seq.*, on March 8, 2023, Plaintiffs domesticated[4] the Judgment in New Jersey, where Breslin resides. (ECF No. 1-2.)

Plaintiffs initially sought to collect on the Judgment in New Jersey Superior Court, Special Civil Part ("New Jersey Action"). (*See* Mot. to Strike at 2, ECF No. 16-1.) In September 2024, the Special Civil Part ordered Breslin to comply with a subpoena for financial information, Breslin's wife to comply with a subpoena for a deposition, and Boujie (an LLC owned by Breslin's wife) to comply with a subpoena for documents. (*See* Pls.' Ex. A ("Discovery Order") at *2–*3.)

Following the Special Civil Part's order, the parties agreed to a Protective Order to govern the disclosure of certain confidential information and documents, which states:

> Confidential Information shall not be used or disclosed by the parties, counsel for
> the parties, or any other persons identified in paragraph 13, infra, for any purpose

---

[3] The following recitation of the relevant facts underlying Plaintiffs' claims is drawn exclusively from Plaintiffs' Complaint.

[4] The UEFJA is New Jersey's "selected means for discharging its Full Faith and Credit obligations." *Singh v. Sidana*, 387 N.J. Super. 380, 382 (App. Div. 2006). A "domesticated" judgment "has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a Superior Court of [New Jersey] and may be enforced in the same manner." N.J.S.A. 2A:49A-27.

whatsoever, other than for purposes of this litigation, which, for avoidance of doubt, shall include any court proceedings to collect upon Plaintiffs-Judgment Creditors' January 16, 2023 Judgment against Kevin Breslin.

The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity, except that the following categories of persons may be allowed to review Confidential Information:
a. Counsel for the parties and employees of counsel who have responsibility for the action;
b. Individual parties and officers, directors, employees, agents or representatives of a party, but only to the extent counsel determines in good faith that such person's assistance is reasonably necessary to the conduct of the litigation in which the information is disclosed;
c. The Court and its personnel;
d. Court reporters and recorders engaged for depositions and/or hearings;
e. Those persons specifically engaged for the limited purpose of making copies of documents or organizing or processing documents, including outside vendors hired to process electronically stored documents;
f. Consultants, investigators, or experts employed by the parties or counsel for the parties to assist in the preparation and trial of this action but only after such persons have agreed in writing to adhere to this Protective Order; and
g. Other persons only by written consent of the Producing Party or upon order of the Court and on such conditions as may be agreed upon or ordered.

(*See* Mot. to Seal Ex. 1 ("Protective Order") ¶¶ 12–13, ECF No. 3-2.)

Because the Special Civil Part can only hear actions where the amount in controversy is less than $20,000, N.J. Ct. R. 6:1-2(a)(1), Plaintiffs filed a complaint in this Court.[5] (*See* Compl.) The Complaint alleges that Breslin used Boujie to hide his earnings and assets from the Judgment. (*Id.* ¶ 2.) Plaintiffs allege Breslin deposited his approximately $300,000 annual salary as a Certified Public Accountant into Boujie's accounts each month. (*Id.*) Plaintiffs claim Boujie used those funds to purchase the $2.5 million New Jersey home where the Breslins live ("Property"), as well as pay its mortgage and maintenance costs. (*Id.*) Plaintiffs further allege that Boujie, an LLC that "sells custom apparel and inexpensive novelty products," has no business reason to buy or maintain

---

[5] Pursuant to Plaintiffs' Motion to Temporarily Seal, the Complaint was sealed from public disclosure by Magistrate Judge Michael A. Hammer. (ECF Nos. 3, 11.)

3

a $2.5 million home. (*Id.* ¶ 24.) Plaintiffs also state that on February 23, 2023, Breslin's aunt, Costello, loaned Breslin $600,000 ("Costello Loan"), which was recorded as a second mortgage on the Property. (*Id.* ¶¶ 40–41, 49.) Plaintiffs assert the Costello Loan "plac[ed] $600,000 of equity in the Property out of the reach of Boujie/Mr. Breslin's legitimate creditors." (*Id.* ¶ 49.) And, according to the Complaint, Breslin and Boujie have not made regular payments on the Costello Loan, despite its two-year term having expired. (*Id.* ¶¶ 50–52.)

The Complaint asserts that Breslin sought to conceal his earnings and the Property appreciation from Plaintiffs in violation of the New Jersey Uniform Voidable Transactions Act ("UVTA"), N.J. Stat. Ann. § 25:2-20 to -34[6] (Count I); alleges that Breslin incurred the Costello Loan to "hinder, delay, or defraud" Plaintiffs and prevent them from collecting on the Judgment (Count II); and requests a declaratory judgment to pierce Boujie's corporate veil as to the Property's deed (Count III). (*See id.*)

On July 23, 2025, Defendants moved to strike the Complaint in its entirety under Rule 12(f), including sealed paragraphs 27–28, 30, 42–45, 47–48, 51, and 65, on the grounds that the Complaint discloses information the Protective Order designated as Confidential, and whose use the Protective Order prohibits. (Mot. to Strike, ECF No. 16.) Plaintiffs filed opposition. (Pls.' Opp'n, ECF No. 19). Defendants filed a reply brief in further support. (Defs.' Reply, ECF No. 20.) This motion is now fully briefed and ripe for the Court to decide.

---

[6] The New Jersey Uniform Voidable Transactions Act ("UVTA"), N.J. Stat. Ann. §§ 25:2-20 to -34, provides judgment creditors with statutory remedies to void transfers made with actual intent to hinder, delay, or defraud creditors, as well as transfers made for less than reasonably equivalent value while the debtor was insolvent or rendered insolvent. The Act applies broadly to transfers of assets, including insider transactions and sham liens or obligations, and authorizes courts to set aside voidable transfers, avoid fraudulent liens, and grant equitable relief to prevent further dissipation of assets.

## II.     LEGAL STANDARD

A court may, upon motion or *sua sponte*, strike from the pleadings "any redundant, immaterial, impertinent, or scandalous matter."[7] Fed. R. Civ. P. 12(f). The Court's determination on a "motion to strike under Rule 12(f) is discretionary." *Newborn Bros.*, 299 F.R.D. at 94 (quoting *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011)). Nevertheless, "motions to strike under Rule 12(f) are highly disfavored" because they are "often sought by the movant simply as a dilatory tactic." *Hope Now Modifications*, 2011 WL 883202, at *1 (quoting *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)).

"The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint 'any redundant, immaterial, impertinent, or scandalous matter' which will not have any possible bearing on the outcome of the litigation." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002). Yet even where the challenged material has no possible bearing on the outcome of the litigation, "a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." *Newborn Bros.*, 299 F.R.D. at 94 (quoting *Hope Now*, 2011 WL 883202, at *1). Thus, motions to strike "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 619 (D.N.J. 2000) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F.Supp. 200, 217 (D.N.J. 1993)). "A motion to strike should not be used as a vehicle to determine disputed

---

[7] The Court notes that the moving party must file a motion to strike under Rule 12(f) "within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). Plaintiffs served Breslin and Boujie on June 26, 2025, and Costello the next day. (*See* Costello Proof of Service, ECF No. 8; Breslin Proof of Service, ECF No. 9; Boujie Proof of Service, ECF No. 10.) So, Defendants had until July 18, 2025, at the latest, to file their Rule 12(f) motion. But Defendants filed their 12(f) motion on July 23, 2025. The Court, nevertheless, has the discretion to "consider untimely motions to strike and to grant them if doing so seems proper." *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 95 (D.N.J. 2014) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1380 (3d ed. 2004)). The Court exercises its discretion to do so here.

5

and substantial questions of law or fact." *Id.* (citing *Glenside W. Corp. v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991)).

A motion to strike is "construed strictly against striking portions of pleading on grounds of immateriality and if the motion is granted at all, the complaint should be pruned with care." *Morgan Home Fashions, Inc. v. UTI, U.S., Inc.*, No. 03-772, 2004 WL 1950370, at *8 (D.N.J. Feb. 9, 2004). "If there is any doubt as to whether a matter in a pleading should be stricken, the doubt should be resolved in favor of the pleading." *United States v. Boston Sci. Neuromodulation Corp.*, No. 11-1210, 2014 WL 4402118, at *3 (D.N.J. Sept. 4, 2014).

## III.    DISCUSSION

It is undisputed that the Complaint is based on information that Plaintiffs learned from Defendants' documents produced in the New Jersey Action and designated as Confidential under the Protective Order. (Mot. to Strike at 3–4; Pls.' Opp'n at 2–5.) Defendants seek the extraordinary remedy of striking the Complaint *in its entirety* (*see* Defs. Reply at 4), not just the paragraphs Defendants claim improperly disclose Confidential Information in violation of the Protective Order (*see* Mot. to Strike at 3–4). In opposition, Plaintiffs argue that, (1) the plain language of the Protective Order allows for the use of Confidential information in this proceeding to collect on the Judgement; and (2) "the sealed paragraphs containing the purportedly confidential information are important and necessary to the Complaint, which seeks relief under the UVTA and thus requires pleading with specificity under [Rule] 9(b)." (Pls.' Opp'n at 7.) The Court agrees with Plaintiffs.

### A.    The Complaint Does Not Violate the Protective Order

While consent orders, like the Protective Order, are "judicial acts, they have many of the attributes of contracts voluntarily undertaken." *Fox v. U.S. Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3d Cir. 1982). Courts, therefore, interpret consent orders using "ordinary contract law

principles." *Harris v. City of Philadelphia*, 47 F.3d 1311, 1323 (3d Cir. 1995). *See also Rice v. Electrolux Home Prods., Inc.*, No. 15-371, 2017 WL 83320, at *1 (M.D. Pa. Jan. 10, 2017) ("The starting point for interpretation of a protective order lies in its plain language." (citing *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271–72 (10th Cir. 2010))). The parties agreed to the Protective Order in New Jersey, so New Jersey's rules of contract interpretation apply. *Weisman v. New Jersey Dep't of Human Servs.*, 982 F. Supp. 2d 386, 392–93 (D.N.J. 2013) ("Because a settlement agreement is a simple legal contract, the resolution of disputed terms would be settled by applying principles of New Jersey contract law.")

"A consent order is, in essence, an agreement of the parties that has been approved by the court." *Hurwitz v. AHS Hosp. Corp.*, 438 N.J. Super. 269, 292 (App. Div. 2014). Courts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." *In re County of Atlantic*, 230 N.J. 237, 254 (2017) (quoting *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014)). "The plain language of the contract is the cornerstone of [a court's] interpretive inquiry . . . ." *Extech Bldg. Materials, Inc. v. E&N Constr. Inc.*, 262 N.J. 271, 280 (2025) (quoting *Barila v. Bd. of Educ. of Cliffside Park*, 241 N.J. 595, 616 (2020)). "If the language is clear, that is the end of the inquiry." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008). The Court simply enforces the contract as written. *In re County of Atlantic*, 230 N.J. at 254 (quoting *Maglies v. Estate of Guy*, 193 N.J. 108, 143 (2007). "To assist with this [inquiry], New Jersey courts often look to general-use dictionaries." *Centennial Plaza Prop, LLC v. Trane U.S. Inc.*, 771 F. Supp. 3d 481, 489 (D.N.J. 2025) (collecting cases).

"If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." *Chubb Custom Ins. Co.*, 195 N.J. at 238 (citing *Nester v.

*O'Donnell*, 301 N.J. Super. 198, 210 (App. Div. 1997)). Where a term is ambiguous, "courts will consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." *In re County of Atlantic*, 230 N.J. at 255 (quoting *County of Morris v. Fauver*, 153 N.J. 80, 103 (1998)). Moreover, because a consent order "memorializes the bargained for positions of the parties," it "should be strictly construed to preserve those bargained for positions." *Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 319 (3d Cir. 1990).

Thus, the Court's analysis of an alleged violation of the Protective Order begins with the Order itself. The Protective Order provides that:

> Confidential Information shall not be used or disclosed by the parties, counsel for the parties, or any other persons identified in [the Protective Order], for any purpose whatsoever, other than for purposes of this litigation, which, for avoidance of doubt, shall include any court proceedings to collect upon [the Judgment] against Kevin Breslin.

(Protective Order ¶ 12.) The Protective Order means what it says—confidential information may be used for "any court proceedings" to collect on the Judgment. (*Id.*)

Defendants counter that "this case is not a collections case against Kevin Breslin, but rather, involves multiple claims, including under the Uniform Voidable Transactions Act, not just against Kevin Breslin, but also against Defendants Boujie and Costello." (Mot. to Strike at 4.)

This argument misses the mark. The litigation exemption in the Protective Order is not limited to a particular kind of collections action. It covers "*any court proceedings* to collect upon" the Judgment. (Protective Order ¶ 12.) The plain meaning of "to collect" is "[t]o gather (money owed or due) from a number of people." *Collect*, Oxford Eng. Dictionary, https://doi.org/10.1093/OED/4629640942 (last visited Mar. 16, 2026). This action is a proceeding

to gather money owed to Plaintiffs through the Judgment from Defendants. As the Complaint itself states:

> Plaintiffs bring this action to avoid Mr. Breslin's fraudulent transfers and, to the extent necessary, for entry of a money judgment against all parties, *to put a stop to Mr. Breslin's efforts to avoid paying the Judgment, including his attempts to fraudulently transfer his earnings and home equity subject to the Judgment into assets purportedly owned by another entity* and controlled by Ms. Breslin.

(Compl. ¶ 7.) Plaintiffs allege Defendants used Boujie's corporate form and Costello's loan to shield Breslin's assets from being gathered to pay the Judgment owed to Plaintiffs. Piercing Boujie's corporate form, undoing Breslin's transfers to Boujie, and voiding Costello's loan would, according to Plaintiffs, allow them to gather such money. (*Id.*) Therefore, this action plainly falls within "any court proceedings to collect upon" the Judgment. (*See* Protective Order ¶ 12.) Because the Complaint does not violate the Protective Order, and thus does not include "redundant, immaterial, impertinent, or scandalous matter," Rule 12(f), the Court **denies** Defendants' motion to strike the Complaint.[8]

### B.    Defendants Have Not Shown Prejudice

Even if the Complaint's purported disclosure of Confidential Information violated the Protective Order, Defendants have not shown prejudice warranting a motion to strike.

The purpose of the Protective Order, as its name suggests, is to protect information "sensitive, confidential and essential to the privacy interests of the parties, the improper disclosure of which could cause substantial damage to the legitimate privacy and other interests of one or

---

[8] Moreover, the Protective Order allows the parties to disclose Confidential Information to the Court. While the Protective Order bars the parties from disclosing Confidential Information to "any third person or entity," it lists seven categories of persons authorized to review Confidential Information. (*Id.* ¶ 13.) One category is "[t]he Court and its personnel." (*Id.*) Because the Protective Order "applies to all proceedings in these cases, including any appeals," "the Court" necessarily includes this Court. (*Id.* ¶ 22.) Thus, even if Plaintiffs had disclosed Confidential Information to the Court, disclosure to the Court is permitted.

9

more parties." (*See* Protective Order at *2.[9]) In compliance with the Protective Order, Plaintiffs went to great lengths to avoid revealing any Confidential Information—including by redacting sensitive information (*see* Compl. ¶¶ 27–28, 30, 42–45, 47–48, 51, 65) and filing a Motion to Seal, which Magistrate Judge Hammer granted (*see* Order Granting Mot. to Seal, ECF No. 11). And the Complaint is now sealed, meaning only the parties and the Court may view it. It is thus unclear Defendants are suffering enough prejudice for the Court to grant a highly disfavored remedy and strike the *entire* Complaint.[10] Therefore, because Defendants have failed to show any "redundant, immaterial, impertinent, or scandalous matter" in the Complaint caused them prejudice, the Court **denies** the motion to strike.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion to strike Plaintiffs' Complaint (ECF No. 16) is **DENIED**.  An appropriate Order accompanies this Opinion.

**DATED:** March 18, 2026

_____
**JULIEN XAVIER NEALS**
**United States District Judge**

---

[9] Pincites preceded by an asterisk (*) refer to ECF pagination.

[10] The mere fact that Plaintiffs filed a lawsuit related to collecting on the Judgment in this Court is not, by itself, prejudicial. The purpose of protective orders is to protect information, not confer sweeping immunity from suit.